### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JOESHA D.,

                    Claimant,

        v.

FRANK J. BISIGNANO,
Commissioner of Social Security,

                 Respondent.

No. 23 C 2103

Magistrate Judge Jeffrey T. Gilbert

### MEMORANDUM OPINION AND ORDER

Joesha D.[1] ("Claimant") seeks judicial review of the final decision of the Commissioner of Social Security[2] ("Commissioner"), denying her application for disability and supplemental security income benefits. The parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). [ECF No. 8]. After reviewing the record and the parties' briefs, the Court grants Claimant's request for remand in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [ECF No. 18] ("Motion") and denies the Commissioner's Motion for Summary Judgment [ECF No. 25] ("Response").

---

[1] In accordance with Northern District of Illinois Local Rule 8.1, the Court refers to Claimant only by his first name and the first initial of his last name.

[2] Frank J. Bisignano was confirmed as the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he is automatically substituted as the named defendant in this case.

1

## I.     Procedural History

On December 29, 2020, Claimant filed an application for a period of disability and disability insurance benefits and also filed a Title XVI application for supplemental security income on November 8, 2021. (R.20). Claimant alleged a disability beginning January 1, 2021. (R.20). The application was denied initially and on reconsideration after which Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (R.20). A telephone hearing was held on June 7, 2022, at which Claimant was represented by an attorney. (R.20). A vocational expert also testified. (R.20). The ALJ issued a decision on June 27, 2022, finding Claimant not disabled under the Social Security Act denying benefits. (R.20-33). The Social Security Administration Appeals Council denied Claimant's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (R.1-7). Claimant filed this lawsuit seeking judicial review of the Commissioner's decision, and this Court has jurisdiction pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## II.     The ALJ's Decision

Under the Social Security Act, disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part, sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Commissioner must determine whether: (1) the claimant has performed any

substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairments or combination of impairments meet or equal any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform any past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four, and the burden shifts to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

Applying the five-part test in this case, the ALJ found at step one that Claimant had not engaged in any substantial gainful activity since January 1, 2021, the alleged onset date. (R.23). At step two, the ALJ found Claimant had the following severe impairments: depression, anxiety, posttraumatic stress disorder, borderline intellectual functioning, adjustment disorder, and left carpal tunnel syndrome. (R.23). At step three, the ALJ found that Claimant did not have any impairment or combination of impairments that met or equaled any of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (R.24-25). With respect to Claimant's mental impairments, the ALJ undertook the paragraph B analysis[3] and determined that Claimant had mild limitations in

---

[3] To determine whether a mental impairment meets or equals listing level severity at step three of the sequential analysis, a claimant must prove she meets the severity criteria of

3

understanding, remembering or applying information, and in adapting and managing herself, and that Claimant has moderate limitations in interacting with others and in concentrating, persisting or maintaining pace. (R.24-25). Before step four, the ALJ determined:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except frequently handling with the left upper extremity. She is limited to simple, routine tasks. She can have occasional interaction with the public.

(R.26). At step four, the ALJ found that Claimant is unable to perform any past relevant work. (R.31-32). At step five, the ALJ found there were jobs in the national economy Claimant could perform based on the testimony of the vocational expert who opined that Claimant could perform the jobs of mail clerk, cleaner, and collator operator. (R.32-33). Based on these findings, the ALJ concluded Claimant was not disabled. (R.33).

## DISCUSSION

### I.     Standard of Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision,

---

either paragraph B or C. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06. To satisfy the paragraph B criteria, a claimant must demonstrate an "[e]xtreme limitation of one, or marked limitation of two" of four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing oneself. *Id.* To evaluate these four areas, ALJs will investigate how an impairment interferes with a claimant's ability to function independently, appropriately, effectively, and on a sustained basis, as well as the quality and level of overall functional performance, any episodic limitations, the amount of supervision or assistance required, and the settings in which a claimant is able to function. 20 C.F.R. § 404. 1520a(c)(2).

4

therefore, is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standard in reaching her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is ... 'more than a mere scintilla.' ... It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053-54 (7th Cir. 2024) (citations omitted). More specifically, the Seventh Circuit stated:

> All we required is that ALJs provide an explanation for how the evidence leads to their conclusions that is "sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." … At times, we have put this in the shorthand terms of saying an ALJ needs to provide a "logical bridge from the evidence to his conclusion."

*Id.* at 1054 (citations omitted). When conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th

Cir. 1990); *see also Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of that conflict.") (internal quotations and citation omitted). The court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007); *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding the ALJ's decision must be affirmed even if "reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

## II.    Analysis

Claimant argues the mental limitations in the RFC are not supported by substantial evidence. Specifically, Claimant says the ALJ, despite relying on two state agency psychologists' opinions finding Claimant had moderate limitations in concentration, persistence or pace ("CPP"), did not incorporate any limitations addressing the psychologists' CPP findings in the "MRFC1 worksheet" portion of their opinions. Motion [ECF No. 18] at 5-13. As the Court finds this issue is dispositive of the question of remand, the Court declines to address Claimant's other arguments.[4]

The ALJ's "RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir.

---

[4] *See Monday v. Comm'r of Soc. Sec.*, 2025 WL 865146, at *4 (N.D. Ind. Mar. 20, 2025) (describing agency reviewers' method for assessing a claimant's mental RFC including use of "a form called Mental Residual Functional Capacity Assessment" which allows evaluators to provide additional information and explanations related to the Paragraph B functional areas including "(1) a checkbox-type worksheet for the psychologist to assess the claimant's limitations and (2) a narrative section that contains a written assessment of the claimant's

2019). "Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00C(3). When an ALJ addresses a claimant's CPP limitations, the "RFC assessment need not recite the precise phrase 'concentration, persistence, or pace'" but "any alternative phrasing must clearly exclude those tasks that someone with the claimant's limitations could not perform." *Paul v. Berryhill*, 760 F. App'x 460, 465 (7th Cir. 2019); *see O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010).

With respect to Claimant's CPP limitations, the ALJ opined at Step Three that Claimant had "no more than a moderate limitation" in this functional area. (R.25.) The ALJ acknowledged Claimant's testimony that she had low energy stemming from her mental health impairments but also noted Claimant "reported spending a lot of time with her children, playing games, doing puzzles, reading books, and watching movies, all of which presumably requires some degree of concentration, persistence and pace." (*Id.*) The ALJ also noted Claimant "consistently presented as alert, attentive, responsive, and oriented in all spheres" and "demonstrated an ability to maintain conversational exchanges with various examiners." (*Id.*)

At Step Four, the ALJ found opinions from two reviewing state mental health psychologists to be "partially persuasive" and relied on those opinions in crafting the mental restrictions in the RFC. (R.30.) Both psychologists at the initial and reconsideration level found Claimant was moderately limited in understanding,

---

RFC"). *See also Lea Z. v. Bisignano*, 2025 WL 2380681, at *2–5 (N.D. Ill. Aug. 15, 2025) (describing role of MRFCA checklist form).

remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R.209-225.) As to interacting with others, at the initial level, Dr. Williamson found Claimant had no limitations in this area, while on reconsideration Dr. Nichols found Claimant to have mild limitations in interacting with others. (R.209-201, R.223.)

In the MRFC1 "checklist" section of their reports, Dr. Williamson and Dr. Nichols each found Claimant had moderate limitations in sustained concentration and persistence with respect to her ability to carry out detailed instructions, maintain attention and concentration for extended periods, and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R.209-225.) They both also found Claimant was not significantly limited in her ability to carry out very short and simple instructions, to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, to sustain an ordinary routine without special supervision, to work in coordination with or in proximity to others without being distracted by them, and to make simple work-related decisions. (*Id.*) With respect to understanding and memory, the reviewing psychologists both found Claimant was moderately limited in the ability to understand and remember detailed instructions, but not significantly limited in remembering locations and work-like procedures or understanding and remembering very short and simple instructions. (*Id.*)

Both psychologists also provided narrative summaries of Claimant's functional

8

abilities. Dr. Williamson, the initial reviewer, included a narrative stating Claimant had "sufficient cognitive, memory and thought process skills to retain the ability to understand, remember, and carry out one/two-step repetitive tasks and complete a normal work-day without interruptions from psychologically based symptoms. Claimant reports no-mild limitations in the social domain." (R.215.) At the reconsideration level, Dr. Nichols adopted the identical narrative. (R.225.)

The ALJ concluded the two psychologists' opinions were "partially persuasive" because "[t]he overall record supports moderate limitations in interacting with others and concentrating, persisting, and maintaining pace" and he addressed those limitations with "corresponding functional limitations of simple, routine tasks, and occasional interaction with the public" in the RFC (R.30). The ALJ did not mention or address the psychologists' checklist findings describing Claimant's CPP limitations. (R.30.) Instead, the ALJ only referenced the narrative portion of Dr. Williamson's evaluation and noted that Dr. Nichols concurred with those functional limitations on reconsideration (other than acknowledging Dr. Nichols found Claimant had mild, rather than no, limitations in interacting with others). (*Id.*)[5]

---

[5] The ALJ does not specifically explain why he found the psychologists' opinions to be only partially persuasive. To that end, the Court notes there are a few differences between the ALJ's conclusions and the psychologists' opinions, as well as one important consistency across those opinions. In terms of differences between the ALJ and the psychologists' opinions, the psychologists found no limitation in Claimant's ability to interact with others at the initial level and a mild limitation in interacting with others at the reconsideration level, while the ALJ found Claimant to be moderately limited in interacting with others at Step Three. (R.25, R.30.) The psychologists also both found Claimant to have moderate limitations in understanding, remembering, or applying information, and in adapting or managing oneself, while the ALJ at Step Three concluded Claimant had only mild limitations in these two functional areas. (R.25-25, R. 30.) Of most relevance for the Court's analysis, however, the ALJ concurred with the psychologists' findings of moderate limitations in concentrating,

Claimant argues the mental portion of the RFC is not supported by substantial evidence because it does not include any restrictions to address her moderate limitations in maintaining attention and concentration for extended periods that were described in the psychologists' checklists, including completing a normal workday and workweek without interruptions from psychologically based symptoms, or performing at a consistent pace without an unreasonable number and length of rest periods. Motion [ECF No. 18] at 5-12. Claimant also points to record evidence supporting her CPP limitations that she says the ALJ failed to adequately weigh in crafting the RFC, such as her difficulty maintaining consistent attention and concentration during a psychological consultative examination and that another provider had to rephrase questions to Claimant. *Id.* Claimant says the ALJ failed to explain the basis for his conclusory statement that limiting Claimant to simple, routine tasks, the only relevant mental limitation included in the RFC, adequately accommodated her moderate CPP limitations. *Id.*

The Court agrees with Claimant and finds remand is warranted because the mental restrictions in the RFC are not supported by substantial evidence. The ALJ included only one mental restriction in the RFC that arguably addresses Claimant's CPP limitations: a limitation to "simple, routine tasks" (the only other mental limitation in the RFC was a restriction to occasional interaction with the public, which the Court reasonably understands was intended to address the ALJ's finding

---

persisting, and maintaining pace, noting the "overall record supports" a moderate limitation in CPP, and the ALJ found Claimant had moderate limitations in CPP at Step Three. (R.25, R.30.) Accordingly, the Court determines that the ALJ found persuasive the psychologists' opinions as to Claimant's CPP limitations.

that Claimant had moderate limitations in interacting with others). (R.25-26, R.30.) The Seventh Circuit has explained "[i]n most cases [] employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from [a vocational examiner's] consideration those positions that present significant problems of concentration, persistence and pace." *O'Connor-Spinner*, 627 F.3d at 620 (collecting cases); *see also Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019) (same). "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *Id.*

The Court acknowledges merely employing terms like "simple," "repetitive," or "routine" tasks in an RFC does not result in an automatic determination that the RFC is not supported by substantial evidence. Depending on the nature of a claimant's psychological symptoms, a limitation to simple, routine work could potentially adequately accommodate CPP limitations. And, "[a]n RFC determination that a claimant can perform simple, routine work can accommodate a claimant's moderate limitation in CPP if [] the ALJ has reasonably relied on the opinion of a medical expert who translates CPP findings into an RFC determination . . ." *Maria R. v. Kijakazi*, 2022 WL 16553139, at *4 (N.D. Ill. Oct. 31, 2022) (citing *Pavlicek v. Saul*, 994 F.3d 777, 784 (7th Cir. 2021) and *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019), among other decisions). If the ALJ relies on a narrative translation of the claimant's CPP limitations to formulate the RFC, "[t]he ALJ must consider whether the consultants' narrative RFC assessment adequately encapsulates and translates the checklist." *Pavlicek*, 994 F.3d at 783 (internal quotations omitted).

11

The Court, as noted above, concludes that substantial evidence does not support the ALJ's mental RFC determination. The ALJ described and appears to have relied on the reviewing psychologists' narratives in crafting the RFC but did not address whether those narratives "adequately encapsulate[ ] and translate[ ]" the psychologists' checklist findings. *Pavlicek*, 994 F.3d at 783. As an initial matter, the Court concludes the psychologists' narratives do not adequately encapsulate and translate the checklist findings. Despite finding in the checklist portions that Claimant was moderately limited in her abilities to concentrate for extended periods, complete the workday and workweek without interruptions from psychologically based symptoms, and work at a consistent pace without an unreasonable number of breaks, neither Dr. Williamson nor Dr. Nichols addressed any of those limitations in their narratives. Instead, the narratives concluded, without explanation, that Claimant could, contrary to the checklists, "complete a normal work-day without interruptions from psychologically based symptoms." The psychologists' opinions provide no explanation for that discrepancy, nor do their opinions reconcile the checklist findings regarding Claimant's moderate limitations with respect to the need for breaks during the workday with the narrative that included no limitations related to breaks.

The ALJ, in turn, did not address this seemingly obvious discrepancy in the psychologists' opinions and does not make any mention of the checklist findings, let alone explain why he did not address those findings in the RFC or how he weighed those findings against other record evidence. (R.30.) *See Cain v. Bisignano*, 148 F.4th

12

490, 498–99 (7th Cir. 2025) (affirming RFC as supported by substantial evidence where "ALJ adequately explained the portions of the reports that were either persuasive or conflicted with other evidence in the record and appropriately considered both the narrative and checkbox sections of the reports"). Instead, the ALJ recited the psychologists' narratives without reconciling those narratives with the checklist findings. "Worksheet observations" like those prepared by Dr. Williamson and Dr. Nichols are "medical evidence which cannot just be ignored" in the RFC assessment. *Cain*, 148 F.4th at 498–99 (quoting *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015)). "While the ALJ is entitled to rely on the narrative explanation, the ALJ 'still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms such as the ... MRFC forms.'" *Id.* (quoting *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019)); *see also Pavilicek*, 994 at 783 (narrative translations must encapsulate or translate all checklist findings).

The Commissioner argues there is no inconsistency between the narratives and the checklist findings because "moderate" limitations are defined by regulations to mean a "fair" level of functioning and "'fair' in ordinary usage does not mean 'bad' or 'inadequate'." Response [ECF No. 25] at 10. As an initial matter, the ALJ did not advance this explanation to reconcile the different parts of the psychologists' opinions; therefore, the Court cannot consider this explanation proffered by the Commissioner. *See Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) ("Our review is limited also to the ALJ's rationales; we do not uphold an ALJ's decision by giving it

13

different ground to stand upon.") (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943)).

The Court is also unpersuaded by the Commissioner's argument that the ALJ's failure to address the CPP checklist findings was essentially harmless. The vocational expert testified that the rates of acceptable off-task behavior for the identified jobs is no more than 10% and that if an employee would require 30 additional minutes a day to complete tasks, they would not be employable in the identified jobs. (R.198-201.) That testimony makes Claimant's moderate limitations in her abilities to complete a workday and work week without psychological interruptions, and to work at a consistent pace without taking an unreasonable number of breaks, all the more relevant, as these limitations implicate her ability to stay on task. *See Morgan S.*, 2025 WL 1158558, at *2–3; *Monday*, 2025 WL 865146, at *6. In addition, the Commissioner's suggestion that a moderate limitation in CPP should be interpreted as a "fair" level of functioning and therefore can equate to no limitations at all in the RFC strikes the Court as illogical and unreasonable.[6]

The Commissioner also says the ALJ is entitled to rely on the psychologists' narratives where they encapsulate the checklist findings, Response [ECF No. 25] at 10. That may be so, but the Commissioner fails to provide any explanation for how

---

[6] *See Moy v. Bisignano*, 142 F.4th 546, 555 (7th Cir. 2025) (regulations "explain that 'the spectrum of limitation that may constitute 'moderate' limitation ranges from limitations that may be close to 'marked' in severity to limitations that may be close to the 'mild' level'" and "[t]he Agency's guidance makes clear that 'moderate' impairments should be considered when an ALJ calculates the claimant's residual ability to work. . . To enable meaningful review, the ALJ must at least describe what the moderate limitations are and how they affect the 'ability to work.'").

the narratives did so here. To the contrary, as discussed above, the psychologists' checklist findings appear on their face to be inconsistent with the narrative conclusions that Claimant could complete a workday without *any* interruptions from psychological symptoms.

The Commissioner also does not explain how the psychologists' narratives encapsulate any, let alone all, of the CPP checklist findings. To the contrary, the psychologists' narratives only address functional areas where Claimant was found not to have any significant limitations, such as the ability to understand, remember and carry out very short and simple instructions (which appears to logically correspond to the narratives' limitation to simple, routine tasks). The narratives did not include any restrictions to address the CPP areas where the checklist findings indicated Claimant was moderately limited, including with respect to interruptions from psychological symptoms during the workday and the need for breaks. *See Christine S. v. Bisignano*, 2025 WL 1836085, at \*2–4 (N.D. Ill. July 3, 2025) (remanding where RFC was based on reviewing psychologists' narrative summaries of mental limitations that "mostly considers issues where Plaintiff was not limited" and where "at least one portion" of the narrative was "inconsistent with the checklist findings" which were not addressed by the ALJ in the opinion); *Morgan S. v. Dudek*, 2025 WL 1158558, at \*2 (N.D. Ill. Apr. 21, 2025) (remanding where neither state evaluator addressed "limitations in the narrative sections of their reports" which "addressed only two areas where the doctors agreed plaintiff had no limitations").

Finally, the Court is not persuaded by the Commissioner's argument that the

ALJ "properly weighed" the record evidence "when he considered the persuasiveness of the prior administrative medical findings and explained the reasoning behind his conclusions." Response [ECF No. 25] at 9-10. The Court acknowledges the ALJ stated, albeit in somewhat conclusory fashion, that "[t]he record does not establish limitations that prevents the performance of all work" but the ALJ also concluded "[t]he overall record supports moderate limitations in concentrating, persisting, and maintaining pace." (R.29-30.) The ALJ did not explain how he weighed the record evidence along with the CPP limitations identified in the psychologists' checklist opinions in crafting the mental limitations in the RFC. (R.29.) For instance, the Court cannot discern from the opinion why the ALJ concluded Claimant's ability to care for her young children, complete household chores such as dishes, laundry and sweeping, or grocery shop necessarily translates into the ability to complete work tasks on a full time basis without psychological interruptions or the need for unreasonable breaks. (R.27, R.29.) Similarly, while the ALJ stated Claimant's ability to spend time with her children playing games, doing puzzles, reading books, and watching movies "presumably requires some degree of concentration, persistence, and pace," the ALJ did not explain why the ability to engage in such daily activities translates into an ability to concentrate and persist sufficient to perform full time work. (R.25.) The ALJ did not reconcile his conclusions about Claimant's ability to engage in certain daily activities with the CPP limitations included in the checklist portion of the state psychologists' opinions. In short, the ALJ's conclusory references to record evidence, including as to Claimant's daily activities, do not provide substantial evidence in

16

support of the mental limitations in the RFC.

In light of the ALJ's reliance on the internally inconsistent reviewing psychologists' opinions in crafting the RFC and the ALJ's failure to consider or account for any of Claimant's CPP limitations from the checklist portion of those psychologists' opinions in the RFC, the Court concludes the mental RFC determination is not supported by substantial evidence. *See, e.g., Morgan S.*, 2025 WL 1158558, at *2–3; *Lea Z.*, 2025 WL 2380681, at *2–5; *Christine S.*, 2025 WL 1836085, at *2–4; *Monday*, 2025 WL 865146, at *6-8. Because this issue is dispositive and the case is being remanded, the Court need not address Claimant's remaining arguments. On remand, the Court encourages the ALJ evaluate the complete record, including with respect to Claimant's daily activities, and build a legally acceptable logical bridge between the evidence in the record and his ultimate conclusions, whatever those conclusions may be. *See, e.g., Moy*, 142 F.4th 546 (7th Cir. 2025).

## CONCLUSION

Accordingly, for all the reasons set forth above, Claimant's request for remand in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [ECF No. 18] is granted and the Commissioner's Motion for Summary Judgment [ECF No. 25] is denied.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated:  February 26, 2026

17